UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROL ANN GRADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:14-cv-01893-JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Carol Ann Grady's ("Grady") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq.[1]

**I.    Background**

On November 19, 2009, Ms. Grady filed her application for disability insurance benefits. (Tr. 108) The Social Security Administration ("SSA") denied Ms. Grady's application on March 4, 2010. (Tr. 139-143) She filed a timely request for a hearing before an administrative law judge ("ALJ") on April 15, 2010. (Tr. 147) Following a hearing, the ALJ issued a written decision on September 22, 2011, upholding the denial of benefits. (Tr. 113-122)

On October 25, 2012, the Appeals Council vacated the ALJ's decision and remanded Ms. Grady's case for additional proceedings. (Tr. 128-131) On July 18, 2013, following an additional hearing, the ALJ issued a written decision finding Ms. Grady not disabled. (Tr. 25-36) The

---

[1] Ms. Grady initially also applied for Supplemental Security Income pursuant to Title XVI of the Social Security Act. However, on November 30, 2009, the Commissioner dismissed the SSI application because Ms. Grady did not meet the income requirements. Accordingly, Ms. Grady's counsel has chosen to proceed with an appeal of the denial of Title II benefits. (Doc. 8 at 2 n.2)

Appeals Council denied Ms. Grady's request to review the ALJ's decision. (Tr. 1-5) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000). Ms. Grady filed this appeal on November 7, 2014. (Doc. 1) The Commissioner filed an Answer. (Doc. 4) Ms. Grady filed a Brief in Support of her Complaint. (Doc. 8) The Commissioner filed a Brief in Support of the Answer. (Doc. 13) Ms. Grady subsequently filed a Reply Brief. (Doc. 14)

## II.     Decision of the ALJ

The ALJ determined that Ms. Grady meets the insured status requirements of the Social Security Act through September 30, 2013, and had not engaged in substantial gainful activity since August 4, 2009, the alleged onset date of disability. (Tr. 28) The ALJ found Ms. Grady has the severe impairments of type 1, insulin-dependent diabetes mellitus (resulting from severe gallstone pancreatitis), degenerative disc disease, deep venous thrombosis, antiphospholipid syndrome[2], carpal tunnel syndrome, major depression, and alcoholism, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28-29)

After considering the entire record, the ALJ determined Ms. Grady has the residual functional capacity ("RFC") to perform light work except she must avoid climbing ropes, ladders, and scaffolds, and can only occasionally push and pull with her arms or occasionally use her hands for fingering and fine manipulation. (Tr. 29) The ALJ also found that Ms. Grady can frequently use her legs for pushing and pulling, and frequently kneel, crouch, and crawl. (Id.) The ALJ further found Ms. Grady must avoid working at unprotected heights and in or around

---

[2] Antiphospholipid syndrome (APS) is "an autoimmune disorder caused when antibodies -- immune system cells that fight off bacteria and viruses -- mistakenly attack healthy body tissues and organs. In APS, specific antibodies activate the inner lining of blood vessels, which leads to the formation of blood clots in arteries or veins." NINDS Antiphospholipid Syndrome Information Page, http://www.ninds.nih.gov/disorders/antiphosphlipid/antiphospholipid.htm (last modified June 30, 2015).

hazardous machinery and is able to understand, remember, and carry out only simple instructions and non-detailed tasks. (Id.) The ALJ found Ms. Grady unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform, including tanning salon attendant, bakery conveyor line worker, housekeeper/cleaner, and folding machine operator. (Tr. 34-35) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 36) Ms. Grady appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

#### 1. Ms. Grady's Testimony on March 15, 2011

At the time of the hearing, Ms. Grady was living with her husband. (Tr. 255) Her husband worked full time, leaving her home alone during the day. (Tr. 255-256) She has one year of college plus a license as a real estate broker. (Tr. 256) In order to maintain her license, she takes continuing education classes every other year. (Tr. 257) She last worked at the public library for a few months in 2009. (Tr. 256) However, her primary profession was self-employed as a real estate broker. (Tr. 257) She stopped showing homes about four years ago. (Tr. 260) She said that the pain is excruciating when she was on her feet and walking up and down stairs while showing homes. (Id.) Also, with the mental disabilities, she says that working with legal contracts have legal consequences, which are serious. (Id.)

Ms. Grady testified that she twice went to rehab for alcohol abuse once in an inpatient setting and another time in an outpatient setting. (Tr. 257-258)

Counsel indicated Ms. Grady's physical impairments as: antiphospholipid syndrome; disc protrusions L4-L5, L5-S1; chronic pancreatitis; diabetes mellitus insulin-dependence; degenerative joint disease; thoracic spine; deep vein thrombosis; irritable bowel syndrome; thrombocytopenia; recurrent breast abscesses; and facial cellulitis. (Tr. 258) Counsel further indicated that Ms. Grady has the following mental impairments: major depressive disorder, severe; borderline personality disorder; ADHD; and a GAF that has been consistently assessed on axis 5 at 50. (Id.)

On a typical day Ms. Grady gets up about 8:00 a.m., takes her morning medication, and sits with her husband while he eats breakfast. (Tr. 259) After he leaves for work, she goes back to bed. (Id.) If there is an important errand she needs to take care of, she will set an alarm clock. (Id.) She will walk her dog in the afternoon. (Id.) After walking her dog, Ms. Grady goes back to bed. (Id.) She will sometimes wear the same clothes for weeks. (Id.) It hurts to brush her hair so unless her husband helps her, she does not brush her hair. (Id.) She is able to walk about half a block without difficulty. (Tr. 260) She can stand unsupported without difficulty for about 15 to 20 minutes. (Id.) She can sit for about an hour and then has to change positions, either lying flat on the couch, sitting in a different chair, or lying flat in bed. (Tr. 261)

### 2. ALJ Post-Hearing Addendum

After the conclusion of the first hearing, the ALJ included a post-hearing addendum. In the addendum, the ALJ noted that the claimant's medical records indicate that she is noncompliant with her medication, her diet, and her psychiatric treatment. (Tr. 262) The ALJ further stated that the medical records show at least five detox and rehabs and that many of claimant's impairments appear related to her alcohol and drug abuse. (Id.) The ALJ also pointed to a history of cocaine abuse and narcotic pain medication addiction. (Id.)

### 3. Supplemental Hearing on July 20, 2011

On July 21, 2011, a supplemental hearing was held to allow counsel to cross-examine the vocational expert, Delores Gonzalez. (Tr. 263) Counsel questioned Ms. Gonzalez extensively regarding her process and foundation for her answers to several interrogatories and ultimately suggested that the Commissioner failed to lay a sufficient foundation for the interrogatories to be admitted into evidence. (Tr. 265-274; 276-281) Counsel also asked Ms. Gonzalez what the job of "sticker" entails. (Tr. 275) Ms. Gonzalez testified that a sticker is a person who takes paper-covered wire to artificial flowers and stiffen and straightens them. (Id.) In such a job a person would be reaching, handling, and fingering repetitively. (Id.) Counsel also proposed the following extended hypothetical:

> [A] claimant whose age at the date of onset was 48 and could sit for two hours a day out of 8 and had to alternate between sitting and standing; and was able to stand and walk for no greater than 30 minutes at a time; and whose maximum ability to lift and carry was ten pounds occasionally and no weight frequently. Also assume a worker who had difficulty [] climbing stairs occasionally, working at heights occasionally; had difficulty with balance, stooping, kneeling, crouching, crawling; . . . was not able to engage in fingering or manipulation limited to five minutes at a time; who could use no vibratory tools; who had non-exertional limitations based on understanding and could only understand simple tasks; remembering was limited to simple tasks; could concentrate for no more than half an hour at a time; had difficulty responding appropriately to work discipline; had difficulty responding to pressure or stress in the workplace; . . . and would occasionally have unscheduled absences between three and five days for non-exertional limitations.

(Tr. 281) Ms. Gonzalez testified that based on the rate of absenteeism alone, that the hypothetical individual would have difficulty maintaining competitive employment. (Tr. 282) Ms. Gonzalez also testified that a person who could only occasionally do gross handling (reaching, handling, holding, fingering, writing, typing) would be unable to do any of the three jobs indicated in interrogatory number one and the jobs listed in interrogatory number two. (Id.)

#### 4. Ms. Grady's Testimony on May 2, 2013

At the time of second hearing, Ms. Grady was still living with her husband. (Tr. 47) She again testified that she had been self-employed as a real estate broker and that her last job was part time at the library in 2010 for about three months. (Tr. 49, 66) As a follow up to her previous testimony regarding continuing education classes for her real estate license, Ms. Grady indicated that the last time she was able to take any continuing education classes was in 2012. (Tr. 48) At the library, she worked about 12-15 hours a week in two or three-hour shifts, answering the telephone. (Tr. 65)

Ms. Grady testified that she went through detox and rehab at two different places, one inpatient and one outpatient, in 2006. (Tr. 50) The ALJ noted that she had been through detox at least five times. (Id.) In response, Ms. Grady indicated that all she remembers is Hazleton and Betty Ford but that she also attended some volunteer classes at St. John's. (Id.) Ms. Grady further testified that she was last hospitalized for alcohol and drugs in 2006. (Id.) She still takes pain medication as prescribed by her doctor and tries to stay away from alcohol, last drinking at Christmas. (Id.) However, according to Ms. Grady's testimony, neither alcohol nor drugs caused her lumbar disc problems, chronic pancreatitis, degenerative joint disease, deep vein thrombosis, irritable bowel syndrome, thrombocytopenia, carpal tunnel syndrome, trigger fingers, chronic pain disorder, attention deficit hyperactivity disorder, and borderline personality disorder. (Tr. 54-55) She also testified that her depression was not caused by alcohol or drug use and noted that even as a child she had depression. (Tr. 57) Ms. Grady testified that for her mental impairments she saw Dr. Zang, then Dr. Kreisman until January of 2013, and has now started seeing Robin Park, a psychiatrist. (Tr. 51, 57) She also testified that she was seeing a psychologist, John

Yunker. (Tr. 51) She has trouble remembering some of the issues in her own case and wanted her husband to testify. (Tr. 61)

Ms. Grady testified that she has problems with her arms, specifically if they are not laying down on a table, she gets tremors that are worse in her left hand than in her right. (Tr. 58) Also, since her carpal tunnel surgery at the end of 2011, she still has problems using, on both sides, parts of her arms, her wrists, and her hands. (Id.) She also reports trigger fingers in her left hand and receiving shots in her fingers. (Tr. 59-60) As a result, she has difficulty gripping and holding onto things. (Tr. 60-61) Writing is also very painful as is grasping silverware to eat. (Tr. 62)

Her husband does the laundry, the dishes, empties the dishwasher and, although they have a housekeeper every other Saturday, he does most everything. (Tr. 62-63)

4.  **Testimony of Vocational Expert on May 2, 2013**

Vocational expert, Robin Cook ("Cook"), testified regarding Ms. Grady's vocational history. Ms. Grady worked as a both a real estate agent and as a broker. (Tr. 66-67) However, the Dictionary of Occupational Titles ("DOT") does not differentiate in terms of the DOT number for the two job which is 250.357-018. (Id.) This job has a specific vocational preparation ("SVP") of 5, semiskilled work and an exertional level of light. (Tr. 67) With regard to the library work, Ms. Cook testified the appropriate title was information clerk, DOT number 237.367-022, with an SVP of 4 (semiskilled work) and an exertional level of sedentary. (Id.) Ms. Cook indicated that Ms. Grady did not meet the SVP for this occupation. (Id.)

For hypothetical one, the ALJ asked Ms. Cook to assume a person limited to light exertional work; who should avoid ropes, ladders, and scaffolding; avoid hazardous heights; avoid hazardous machinery; who can frequently do kneeling, crouching and crawling; can

frequently do pushing and pulling movements with her lower extremities; occasionally do pushing and pulling movements with her arms; and can occasionally do fine fingering manipulation. (Tr. 67-68) Ms. Cook determined that such a person would not be able to perform Ms. Grady's previous work in real estate. (Tr. 68) When the ALJ further limited the hypothetical individual person to unskilled work, Ms. Cook further indicated that Ms. Grady would not be able to return to her past work as an information clerk. (Id.) However, such a person would be able to perform a job such as tanning salon attendant, code 359.567-014, light work; SVP of 2. (Tr. 68-69) There are 18,410 jobs nationally available and 280 such jobs available in Missouri. (Tr. 69) In addition, such a person could perform the job of bakery worker conveyor line, code 524.687-022, light work; SVP of 2. (Id.) There are 235,910 jobs nationally available and 460 such jobs available in Missouri. (Id.) Such a person could also perform the job of housekeeping cleaner, code 323.687-014, light exertional level; SVP 2. (Id.) Nationally, there are about 877,980 of those jobs and in Missouri, about 19,790. (Id.) Finally, Ms. Cook testified that such a person could work as a folding machine operator, DOT number 369.686-010. (Id.) There are 110,950 such jobs nationally and 2,670 in Missouri. (Id.) Ms. Cook further testified that her testimony was consistent with the DOT and the Selected Characteristics of Occupations. (Id.)

Ms. Grady's attorney asked Ms. Cook to further limit the hypothetical individual to a person who could only occasionally reach or handle. (Tr. 72) Ms. Cook testified that such a person would be unable to work as a housekeeper. (Id.) Ms. Cook then testified that you can reach without having to push and pull but you could not push and pull without reaching. (Tr. 73) You could possibly push and pull without handling. (Id.) She also testified that you would also have to exert force in terms of lifting if you are pushing or pulling. (Id.) Ms. Cook indicated that a tanning salon attendant requires occasional reaching and occasional handling. (Tr. 74-75)

8

When asked what her understanding of what a tanning salon attendant does, Ms. Cook indicated that a tanning salon attendant greets people that come into the establishment, confirms an appointment, assigns the individual a tanning bed, cleans the bed when he or she is finished, accepts money for the services, and books future appointments. (Tr. 75, 78) Ms. Cook testified extensively about cleaning a tanning bed. (Tr. 78-79)

Counsel also requested that Ms. Cook describe the job of bakery worker – conveyor line. (Tr. 83) Ms. Cook testified that a bakery worker – conveyor line reads a production schedule, inspects cakes or other bakery items moving along the conveyor, may position the items on the conveyor as they need to be repositioned, apply filing or icing by machine, observes the cakes moving along under the various components of the machine to ensure that the topping applied uniformly, smooth iced edges, and notify a supervisor of any malfunctions on the line. (Tr. 83-84) Such a job could require work on a rapid basis. (Tr. 84) The job could also require frequent pushing and pulling of the bakery product, depending on how often you would need to reposition the product. (Id.) Similarly, Ms. Cook testified that a job as folding machine operator would require frequent reaching and handling. (Tr. 87)

Counsel then asked Ms. Cook to limit the ALJ's hypothetical to a person who could only occasionally lift or carry 10 pounds. (Tr. 85) Ms. Cook testified that none of these jobs would be available. (Id.) Counsel asked Ms. Cook to limit the ALJ's original hypothetical with the restriction that the individual could only maintain concentration in two-hour segments. (Tr. 86) Ms. Cook testified that such a person would be able to work in these jobs because at the two hour mark an individual usually would have a respite period. (Tr. 87)

### B. Medical Records

The ALJ summarized Ms. Grady's medical records at Tr. 29-34. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation

process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the

claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
> (2) The education, background, work history, and age of the claimant;
> (3) The medical evidence given by the claimant's treating physicians;
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
> (5) The corroboration by third parties of the claimant's physical impairment;
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In her appeal of the Commissioner's decision, Ms. Grady raises two issues: (1) whether the ALJ properly found Ms. Grady could perform work existing in significant numbers in the

national economy and (2) whether the ALJ properly considered Ms. Grady's alcoholism. Upon review, the Court finds substantial evidence in the record to support the ALJ's decision.

**A. Step Five Analysis: Other Work in the National Economy**

Ms. Grady first asserts that the Commissioner erred in failing to resolve conflicts between the vocational testimony and the listings in the Dictionary of Occupational Titles. (Doc. 8 at 10) Specifically, Ms. Grady argues she could not perform any past relevant work and was limited to other light work with only occasional pushing or pulling requirements with her arms and occasional use of her hands for fingering and fine manipulation, but the vocational evidence consisted of (1) a job, Tanning Salon Attendant, not listed in the Dictionary of Occupational Titles ("DOT"), (2) a job, Housekeeper, that required frequent reaching and significant pushing and pulling, and (3) a job, Bakery Worker-Conveyor Line, that required pushing, pulling and fingering on a frequent basis. (Id.)

    **1. Tanning Salon Attendant**

Ms. Grady argues that prior to cross-examination, the ALJ asked the vocational expert ("VE") if there was a conflict between the testimony and the DOT. However, although the job of Tanning Salon Attendant is not in the DOT, the VE answered in the negative — that there was not a conflict between her testimony and the DOT. Further, Ms. Grady asserts, the ALJ directed the VE not to answer questions about the listing.

The Court finds that there was not a conflict between the VE's testimony and the DOT and that the ALJ was within her discretion to redirect counsel's questioning of the VE. The DOT was last updated in 1991 and the United States Department of Labor's "O*Net OnLine" service, accessed at http://onetonline.org, is the current source of information used to determine qualifying work experience. Consistent with the VE's testimony, the job of tanning salon attendant has been assigned DOT code 359.567-014. See O*Net OnLine,

http://www.onetonline.org/crosswalk/DOT?s=359.567-014&g=Go (last visited Jan. 7, 2016). See also O*Net Letter (July 28, 1998), https://skilltran.com/pubs/New21Occs_1998.pdf. Accordingly, the VE's testimony did not conflict with the DOT.

Also, the ALJ has the authority to determine the subject and scope of a witness's testimony. HALLEX I-2-6-60(A). While the ALJ should provide counsel broad latitude in questioning a witness, "this latitude does not require the ALJ to permit testimony that is repetitive and cumulative or questioning that is designed to intimidate, harass or embarrass the witness." HALLEX I-2-6-60(B). In this case, the ALJ redirected counsel's testimony and instructed counsel that he "can ask questions regarding the claimant's RFC and in relation to the jobs that you have given." (Tr. 82) Upon review of the transcript, the Court finds that the ALJ was well within her discretion to redirect counsel after counsel asked questions regarding other jobs not included in the interrogatories and about which the VE was not prepared to testify.

Accordingly, the ALJ properly relied on the VE's testimony that Ms. Grady could work as a tanning salon attendant.

### 2. Housekeeper

Ms. Grady next asserts that the VE testified about a job listing, Housekeeper, DOT 323.677-014, that requires frequent reaching. However, the hypothetical proposed by the ALJ restricted the hypothetical individual to only occasional pulling and/or pushing and fine finger manipulation but the VE acknowledged that one could not push or pull without reaching and admitted that pushing and pulling is the same arm motion as reaching. (Doc. 8 at 13-14) Further, Ms. Grady argues, the Skill Trans lists pushing and pulling as a significant physical factor as a Housekeeper.

14

The Court finds there not to be a conflict with Ms. Grady's RFC and the job listing of Housekeeper. First, the DOT indicates the *maximum* required of each job position, not a range. Jones v. Astrue, 619 F.3d 963, 978 (8th Cir. 2010) (quoting Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000)) ("The Dictionary of Occupational Title definitions 'are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range.'"). Therefore, while the DOT indicates that the job of Housekeeper requires frequent reaching, frequently is the maximum required amount of reaching in the position. Further, pushing and pulling is not the same as reaching; while pushing and pulling requires reaching, reaching does not necessarily require pushing and pulling. Cleaner, Housekeeper, DOT 323.687-014, 1991 WL 672783. The VE explained this distinction in detail during the hearing. (Tr. 73, 87-88) Finally, the Skill Trans indicates that the job of Housekeeper "*[m]ay* involve significant standing, walking, pushing and/or pulling." (Tr. 506) (emphasis added) Akin to the DOT, the Skill Trans offers approximate maximum requirements for each position including possible physical demands. Accordingly, the ALJ properly relied on the VE's testimony that Ms. Grady could work as a Housekeeper.

### 3. Bakery Worker-Conveyor Line

Finally, Ms. Grady argues that the VE testified that Bakery Worker-Conveyor Line, DOT 524.687.022, is work done on a conveyor belt that may involve pushing and pulling on a rapid basis, and pushing, pulling, and fingering on a frequent basis, contrary to the RFC determination. (Doc. 8 at 14) Accordingly, Ms. Grady additionally asserts that the VE did not provide any basis for the number of total jobs that do not violate the RFC. (Id.)

The Court finds there not to be a conflict with Ms. Grady's RFC and the job listing of Bakery Worker-Conveyor Line. While the VE did testify that such a job may require work on a

rapid basis, she also indicated that, "[i]t depends on your setting." (Tr. 84) Also, while rapid indicates the speed of the work, it does not necessarily predict the frequency. Furthermore, the job listing only requires occasional reaching and, as previously discussed, reaching is required for pushing and pulling. Bakery Worker, Conveyor Line, DOT 524.687-022, 1991 WL 674401. Finally, the VE is not required to provide the number of total jobs for a DOT job description that align with a claimant's specific RFC. See 20 C.F.R. § 404.1566. See also Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005) ("The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers."); Dipple v. Astrue, 601 F.3d 833, 836 (8th Cir. 2010) ("The vocational expert was neither required to articulate the percentage of available jobs that were part-time or full-time, nor to describe labor market conditions beyond the data that were readily available."). Therefore, the ALJ properly relied on the VE's testimony that Ms. Grady could work as a Bakery Worker-Conveyor Line.

Accordingly, substantial evidence supports the ALJ's finding that a sufficient number of jobs existed that a person with Ms. Grady's RFC could perform.

**B. Alcoholism**

Next, Ms. Grady asserts that the Commissioner violated Social Security Ruling ("SSR") 13-2p[3] when the ALJ made drug addiction and alcoholism ("DAA") findings but did not determine if claimant is disabled considering all impairments, including DAA. (Doc. 8 at 15) Ms. Grady argues that the ALJ specifically excluded the DAA limitation from her RFC and also failed to provide an analysis or finding about the materiality of the DAA limitation as required by SSR policy 13-2p. (Id.)

---

[3] Social Security Ruling, SSR 13-2p.; Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 78 Fed. Reg. 11939 (Feb. 20, 2013) (hereinafter "SSR 13-2p").

"Since certain 1996 amendments to the Social Security Act, if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied." See Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003). The Claimant has the burden of proving that drug and alcohol abuse was not a contributing factor material to the disability determination. Id. However, "[t]he plain text of the relevant regulation requires the ALJ first to determine whether [a claimant] is disabled." Id. at 694 (citing 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). "If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent." Id. at 694-95. See also SSR 13-2p ("Under the Act and our regulations, we make a DAA materiality determination only when: i. We have medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder, and ii. We find that the claimant is disabled considering all impairments, including the DAA."). Drug addiction or alcoholism is "material" if the individual would not be found disabled if alcohol or drug use were to cease. See 20 CFR § 404.1535.

In this case, the ALJ considered Ms. Grady's alcoholism as a severe impairment. The ALJ accordingly incorporated associated credible limitations into the RFC determination, finding that Ms. Grady could carry out only simple instructions and non-detailed tasks. (Tr. 28-29, 34) Thereafter, considering all of her impairments, including the DAA, the ALJ determined that Ms. Grady was not disabled. Since the "condition precedent" of a finding of disability is not present in this case, then the ALJ was not required to perform the analysis in 20 CFR § 404.1535.

### C. Previous RFC Determination

In her reply brief, Ms. Grady appears to additionally assert that the ALJ's decision is flawed because the ALJ failed to explain why she omitted certain non-exertional RFC limitations included the ALJ's previous order. The prior RFC determination, from the ALJ's order dated September 22, 2011, included the following limitations:

> [T]he claimant can understand, remember and carry out at least simple instructions and non-detailed tasks, maintain concentration and attention for two-hour segments over an eight-hour period, demonstrate adequate judgment to make simple work-related decisions, adapt to routine/simple work changes, and perform repetitive work according to set procedures, sequence or pace.

(Tr. 119) In the second ALJ determination, the RFC limited Ms. Grady to the following non-exertional limitations, "The claimant is able to understand remember, and carry out only simple instructions and non-detailed tasks." (Tr. 29) While the second determination does not include many of the same non-exertional limitations found in the first decision, the first decision is not a final decision under the Act. 20 C.F.R. § 404.955 ("The decision of the administrative law judge is binding on all parties to the hearing unless – (a) You or another party request a review of the decision by the Appeals Council within the stated time period, and the Appeals Council reviews your case."). Accordingly, the ALJ was not bound by the prior decision and need not have included the same limitations in the second order.

### D. Substantial Evidence Supports the ALJ's Determination

Finally, upon review of the complete record, the Court finds the ALJ's determination to be supported by substantial evidence. The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his or her limitations. See Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's

credibility determination." Id. at 714. In this case, the ALJ pointed to substantial evidence in the record supporting her decision to discount Ms. Grady's allegations. Not only does the record indicate that Ms. Grady was noncompliant with her medication (Tr. 31, 34, 659) but she was also not completely truthful regarding the number of times she went to rehab (Tr. 32, 50, 257-258, 262, 576, 625). The ALJ additionally found Ms. Grady's complaints not to be supported by any objective clinical findings. (Tr. 33-34) For example, despite Ms. Grady's complaints of pain, the medical evidence indicates that she was able to manage the pain with medication and reported varying pain levels from a 6/7 to as low as a 2 on a pain scale of 10. (See, e.g., Tr. 939) Accordingly, the ALJ's determination is supported by substantial evidence.

### VI. Conclusion

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 22nd day of February, 2016.

_/s/ John A. Ross_
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**